# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 3, 2008 Session

## BOBBY JOHNSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-06-247     Don Allen, Judge**

---

**No. W2007-01382-CCA-R3-PC  - Filed December 16, 2008**

---

The petitioner, Bobby Johnson, appeals the denial of post-conviction relief by the Circuit Court for Madison County from his convictions for (1) attempted first degree murder, a Class A felony; (2) aggravated burglary, a Class C felony; (3) aggravated assault, a Class C felony; (4) burglary of a vehicle, a Class E felony; (5) theft of property valued less than $500, a Class A misdemeanor; and (6) harassment, a Class A misdemeanor. He received a sentence of fifteen years for attempted first degree murder, two six-year sentences for aggravated burglary and aggravated assault, a sentence of two years for burglary of a vehicle, and two eleven-month-twenty-nine-day sentences for the misdemeanors. The sentences were imposed concurrently for an effective sentence of fifteen years, and all sentences run consecutively to a prior out-of-state felony sentence. He contends that (1) he received the ineffective assistance of counsel when (a) trial counsel did not obtain the victim's medical records before the petitioner pleaded guilty and (b) trial counsel did not interview two potential alibi witnesses, and (2) trial counsel's deficient performance induced the petitioner to enter involuntary guilty pleas. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Ryan B. Feeney, Selmer, Tennessee (on appeal), and Benjamin Caldwell Mayo, Jackson, Tennessee (at trial), for the appellant, Bobby Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The State's recitation of facts at the plea hearing showed the following events. On July 7, 2004, the petitioner broke into and stole a car belonging to his former girlfriend, Debra Burke. On June 26 and July 3, 2004, he telephoned Ms. Burke and left her messages, both telling her he was sorry and where she could find her stolen car and threatening Ms. Burke because she was no longer the petitioner's girlfriend.

At approximately 12:30 a.m. on July 17, 2004, the petitioner kicked in the front door of Frank Thomas's apartment. Mr. Thomas and Ms. Burke awoke and soon saw the petitioner pointing a gun at them in the bedroom. Mr. Thomas and the petitioner fought, causing the petitioner to drop the gun. The petitioner removed a knife from his clothing and said he would kill Mr. Thomas. He then stabbed Mr. Thomas several times, cutting Mr. Thomas's head, hand, and shoulder. Mr. Thomas's lip and left eye were also injured in the attack.

At the post-conviction hearing, the petitioner's post-conviction counsel informed the court that there were no medical records in either trial counsel's or the State's file. Counsel stated he had issued subpoenas for the company that transported the victim to a hospital and for the treating hospital. The transporting company said they had no records for the victim other than they had driven him to the hospital. The subpoena for the treating hospital came back unserved. No medical records were presented at the post-conviction hearing, and neither party knew the contents of the medical records. The court stated that they would proceed without the records, but that it would review the records when they arrived.

In his testimony, the petitioner recounted his version of what occurred at the preliminary hearing. The petitioner testified that although there was no record of the preliminary hearing, there was no tape of the hearing, and the trial record indicated that the petitioner had waived his right to a preliminary hearing, he attended the preliminary hearing. He said he heard trial counsel say at a later hearing that the tape of the preliminary hearing was unintelligible. The petitioner said the stabbing victim, Mr. Thomas, testified that he had a gathering at his house and that he said that he saw the petitioner by the light coming from the television. The petitioner said Mr. Thomas claimed the petitioner held a "weapon" in his hand. The petitioner said Mr. Thomas had talked about a second non-testifying victim at the preliminary hearing. The petitioner also claimed Mr. Thomas testified about his injuries at the preliminary hearing. The petitioner said Mr. Thomas stated he had stab wounds on his head, neck, arm, and hand. The petitioner claimed, however, that he was sitting near Mr. Thomas at the preliminary hearing and that he could see no scar where Mr. Thomas claimed the petitioner had stabbed him. The petitioner said Mr. Thomas lied at the preliminary hearing.

The petitioner testified that his main theory of the case was that the preliminary hearing testimony, subsequent injury reports to the police, photographs of Mr. Thomas's injuries taken by police officers, and the affidavit of complaint inconsistently stated the injuries. The petitioner said he had wanted Mr. Thomas's medical records of his emergency room visit to show that the injuries were from a later date. The petitioner claimed that because Mr. Thomas did not mention all four of his injuries when he testified at the preliminary hearing, the injuries were from subsequent events

and not injuries inflicted by the petitioner. The petitioner admitted that he did not know the contents of the medical records.

The petitioner testified that he had wanted his trial counsel to obtain his employment records to have proven he was at work when the car burglary occurred. The petitioner claimed his time card would prove he had been working an overtime shift. This claim was belied when post-conviction counsel said that he had obtained a printout showing the petitioner's total hours for that month, that no time card still existed, and that he had spoken with the custodian of records, who said there had been no overtime that period. The petitioner claimed he had taken his time card for that week to his parole officer for photocopying. He also stated that he had never told this to trial counsel.

The petitioner testified that his trial counsel did not investigate the alibi witnesses that he had named for the attempted murder charge. The petitioner stated he told his counsel to speak with his father and Shirley Shields. However, the petitioner then discredited his claim by stating that his father could not remember the events at the time of trial and that the petitioner was not going to use his father as a witness at trial. The petitioner also said that he had only met Ms. Shields the night of the alleged crimes and did not know if she would help him. The petitioner agreed that post-conviction counsel had looked unsuccessfully for Ms. Shields's contact information but that counsel had been able to locate her sister and had asked her to give his phone number to Ms. Shields, who never called him.

The petitioner testified that at the time of his plea hearing, he did not know whether trial counsel had contacted these two people. He said that he did not have his time card or Mr. Thomas's medical records for the claimed injuries. He said he did not have a tape or transcript of the preliminary hearing but that he had talked about the claimed inconsistencies and Mr. Thomas's lack of a scar with counsel. He said counsel had shown him the color photographs of Mr. Thomas's injuries before the hearing. He said he thought a jury would have convicted him and that his punishment would have been enhanced because of his prior felony record. The petitioner testified that he felt coerced into pleading guilty because he did not feel that he had what he needed to defend himself. He said he pleaded guilty to avoid an enhanced sentence and that he understood that he might lose at trial. He also stated that no one had threatened him with anything other than incarceration. He claimed he would not have pled guilty if he had had the preliminary hearing transcript and if the two potential alibi witnesses had been contacted. He also stated he had filed complaints against three of his attorneys with the Board of Professional Responsibility (B.P.R.).

On cross-examination, the petitioner admitted that the photographs, taken two days after the offenses occurred, showed injuries to the stabbing victim's head, shoulder, and lip. The petitioner admitted that trial counsel had talked to him about the State's evidence, including a message the petitioner admitted he left on Ms. Burke's telephone apologizing to her and telling her how she could retrieve her stolen property. The petitioner admitted that trial counsel had told him the message would be admissible at trial. He claimed, however, that the telephone call was not relevant to the car burglary but was from a prior domestic dispute.

The petitioner testified that the trial judge advised him about his rights at the guilty plea hearing the week before his trial date. He said he pleaded guilty in an upset and sarcastic tone of voice to show he felt he had no choice but to plead. He said that he told the judge he was satisfied with counsel but that it was untrue. He admitted that he did not tell the judge either that his counsel did not investigate his alibi witnesses for the attempted murder charge or that he wanted to go to trial. The petitioner explained his behavior by saying that he had notified the B.P.R. of previous counsel because they did not obtain the preliminary hearing tape or Mr. Thomas's medical records, that the court had denied another continuance to obtain the records, and that the trial judge was getting tired of him. He stated he filed a report with the B.P.R. about trial counsel before he filed his petition for post-conviction relief. He claimed he did not want to go to trial without having seen the medical records or the preliminary hearing transcript. He admitted that he did not know the contents of the medical records and that his claims regarding the medical records were speculative. The petitioner persisted in saying that he was entitled to Mr. Thomas's medical records. He stated he felt coerced into pleading guilty because he lacked the preliminary hearing tape and did not know whether counsel had contacted the alibi witnesses, but he later admitted that one of the reasons he chose to plead guilty was that he had weighed his options and wanted to avoid a longer sentence on the charges.

The petitioner admitted that he did not explicitly state in his post-conviction petition that trial counsel did not interview alibi witnesses for his attempted murder charge. He admitted he only mentioned an alibi for the car burglary charges in his petition. The petitioner admitted that he was not able to telephone Ms. Shields from jail because her telephone "blocked" calls originating from the jail. The petitioner admitted that neither she nor his father was present to testify at the post-conviction hearing.

The petitioner's trial counsel testified that when she was appointed to the petitioner's case, she photocopied her two predecessors' case files and the State's files. She said she met several times with the petitioner, who would not decide which of two strategies they would use in his defense. He told her he had an alibi witness but that he would need to speak with the witness before he told counsel her name and how to contact her. She said the petitioner also gave her his father's name and address and the name Lane Johnson, whom the petitioner did not identify. She said that she contacted the petitioner's father, who said he did not know his son had mentioned him as a possible witness, and that he would speak to his son about that before he could talk to her. Counsel said she later represented the petitioner's father in a DUI case, and he told her at that time he would not testify as an alibi witness for his son. She stated that the petitioner never told her about Shirley Shields and that she first heard that name at the post-conviction hearing. She said that she asked the petitioner several times to give her the alibi witness's name but that each time the petitioner said he needed to talk to that person beforehand. She said she later realized that there was no alibi witness and that she could not present a witness with fabricated testimony. She said she contacted Ms. Burke, who told her that the district attorney's office had said she did not have to talk to defense counsel.

Trial counsel testified that the petitioner never told her that he had been working at the time of the car burglary. They only discussed employment generally in the context of sentencing, and the petitioner said he had been employed in the past. In the court's examination of counsel, she stated that the petitioner mentioned that he had been employed when she and he were discussing shortly before trial a "blind plea," i.e., pleading guilty without an agreement. She said the petitioner was concerned that he had not received a plea offer by this time.

Trial counsel testified that she had investigated whether a preliminary hearing had taken place and that she did not think there had been a preliminary hearing. She stated the clerk's office records indicated the petitioner had waived it. Additionally, there was a waiver form signed by the petitioner. Although counsel acknowledged that one of the police reports mentioned a preliminary hearing where the victim testified and the judge bound the case over to the grand jury, she stated that the petitioner was the only one claiming there had been a preliminary hearing. She said she tried several times to obtain the preliminary hearing tape from the clerk's office and finally resorted to listening to the entire tape for the day her client claimed the hearing was held. She said that the intelligible parts of the tape were not the petitioner's preliminary hearing and that the other parts of the tape were unintelligible. She said it was possible that the petitioner's preliminary hearing was one of the muddled parts. She said that because the tape had not yielded any information, she had no information to bring the petitioner about the tape in rebuttal to the petitioner's claim that she had lied to him when she said she would bring him the tape.

Trial counsel testified that she and the petitioner discussed his theory that Mr. Thomas was fabricating his injuries and that he gave inconsistent statements to the police and during the preliminary hearing. She said it was her practice to have a copy of the statements of a client brought to the client in jail for the client to know the evidence against him or her before she met with the client. She said the petitioner had seen the victim's statements and told her about his theory in a visit. She said she explained to her client that the victim was not under oath in an early statement and that the police were just noting selectively what he may have said. She also told him she did not know to what the victim testified, as she was not at the preliminary hearing and there was no tape.

Trial counsel testified that she and the petitioner had conflicts during the representation. She stated that the petitioner would alternate between two theories of the case: (1) an alibi, and (2) a lesser included offense of aggravated assault, where the stabbing in the head was an unintended injury during the fight between Mr. Thomas and the armed petitioner. For her, these claims were mutually exclusive. Counsel also said she explained to the petitioner that the medical records might not help their case for a lesser included offense. She said she told him, however, that they could obtain them. She said that she showed him color photos of the victim's wounds and that these images refuted the petitioner's claim of no head injury. Both she and the petitioner could see the scar on Mr. Thomas's head and other injuries, although the extent of the injuries had been unclear in the black and white photocopies of the photographs counsel had earlier obtained. She said the petitioner seemed to reject the theory of fabricating the injuries after having seen the color photographs. She said she next heard about the medical records in a letter from the B.P.R. informing her of her client's claim that she refused to obtain the records.

Trial counsel testified that she had reviewed medical records in prior cases and that these would generally record all injuries observed by medical staff. When asked whether her perception of the case would change if the medical records did not show any head injuries, counsel said, "No." She explained that her client had inadvertently admitted to her what had happened between the two men and had said that he had stabbed him, but not in the head. Through discussing the case with her client, she said she surmised her client had gone into the house armed with a weapon, meant to do harm, and had actually caused injury to the stabbing victim.

Trial counsel testified that her experience with the petitioner belied his claim that he wanted to go to trial. She stated that he told her not to tell the State that he was interested in a plea offer, as he kept saying the longer he held out for a plea offer, the better the deal he would receive. She said he told her he was experienced in this process, as he had prior felony convictions. Additionally, she said the petitioner was very concerned about going to trial and receiving an enhanced sentence due to his prior felonies. She said she had told the petitioner that even if they had had the preliminary hearing tape, he would likely have been convicted at trial. She said she and the petitioner had talked several times about the possibility of an enhanced sentence. She said that her client had indicated that he was interested in a plea offer only shortly before the scheduled trial date and that she conveyed this interest in a letter to the State. She stated she sent this letter after she and the petitioner had seen photos of the victim's wounds to the head and other injuries and the petitioner had satisfied himself that the victim was not attributing wounds from another fight to the petitioner. She said that she and the State went back and forth in negotiating the plea deal that the petitioner chose to accept. She said he had no problems with the offer at the time. She said this plea deal shortened the sentence the petitioner could have received as a Range II offender by at least five years, as the State had allowed the petitioner to plead as a Range I offender. She said the pleas' terms allowed for a fifteen-year sentence. She stated that she advised the petitioner of the advantages and disadvantages of accepting this plea offer or going to trial. She said the decision to accept the offer was the petitioner's.

Trial counsel testified that she and the petitioner discussed the evidence against him and that there was no serious discussion of claiming the victim fabricated the charges, as too much evidence existed for this to be viable. She said that she and the petitioner discussed his claim that the charges were a conspiracy between the victim, the district attorney's office, and the petitioner's prior counsel. She and the petitioner discussed his telephone calls to the female victim, calls he said were related to a domestic dispute occurring before the events of the underlying convictions. Trial counsel said she asked him why he had called so soon after the incidents underlying the convictions, telling the victim he was sorry and where she could find her car and other stolen property, if the calls really related to another dispute. She said the petitioner realized how this looked and conceded the point. She said that there were eyewitnesses to the car burglary and that Ms. Burke could identify the petitioner as the armed attacker, as they had dated. She also explained, in response to the court's questioning, that the police had already recovered the victim's car by the time the petitioner told the victim where the car would be. She said the police recovered the car in that spot.

Trial counsel testified that the petitioner never claimed an alibi for the vehicle crimes. She stated she saw in the case file when she first received it that prior counsel had requested a continuance to find the petitioner's murder alibi witness. She said that she asked prior counsel about this and that prior counsel told her the petitioner kept telling her he had an alibi but would not give counsel the person's name or a way to contact her.

On cross-examination, trial counsel testified that if the case had gone to trial, she would have argued for a lesser included charge. She said she had explained this to the petitioner and had shown him how this would yield a better result than a conviction for attempted murder. She stated that if the petitioner had insisted on being tried and testifying, he would have been impeached using his four prior felony convictions, each of which imposed lengthy sentences of incarceration. She said that she showed him the State's evidence of his felony convictions, that he said he was the person listed in those documents, and that he was currently on parole for one of the sentences. She said he would have been a Range II offender based on these four felony convictions, but that she was able to obtain a Range I sentence.

Trial counsel testified that when she received notice of the petitioner's B.P.R. claim, she informed him that they had a conflict and she would need to withdraw. She said the petitioner asked her not to withdraw and told her that he had wanted to create a paper trail for his case showing he wanted the medical records. She said she told him she thought they had already resolved that issue. She said she again asked him if he wanted her to obtain the victim's medical records and to stay on the case. Trial counsel said that he told her to stay on the case and that he did not want the medical records.

The trial court questioned counsel regarding the B.P.R. complaint and a court order to see her client in jail. She said that although she had not been able to see her client within the ten-day period in the order, she subsequently met with the petitioner in jail six times. She said that she asked for the name of the alibi witnesses at these meetings but that the petitioner kept saying he needed to contact these people before counsel spoke with them. She said that she waited at first for the petitioner to get back to her but that she spoke with the petitioner's father herself. He also said he needed to speak with his son before he could talk to counsel about his son's case.

Trial counsel testified why she did not obtain the medical records. She said that after she and her client had viewed the photographs, which showed Mr. Thomas's injuries, the client seemed not to want to see the medical records. She stated she told him that as the photos corroborated the victim's statement in the affidavit of complaint, the records were no longer necessary to rebut the victim's claim that the petitioner had stabbed him in the head. She said that the date of the claimed preliminary hearing was approximately two months after the stabbing and that this length of time probably explained why the petitioner claimed he did not see a wound.

Trial counsel testified that she and the petitioner discussed Mr. Thomas's statement in the affidavit of complaint alleging that the petitioner attacked him with a knife and said "I'm going to kill you." She said that the petitioner believed that a jury might view him as a jilted lover and would

sympathize with him and that he thought he would be convicted of a lesser included offense rather than attempted murder. She stated that in her conversations with the petitioner, he had inadvertently admitted he was at the scene of the crime. She said that he persisted at first in saying he was not there but later claimed that although he stabbed the victim, he did not stab the victim's head.

After hearing the testimony of the petitioner and trial counsel, the court noted that it would take the post-conviction petition under advisement and would examine the subpoenaed medical records when they arrived. The record includes these documents, which show that the victim had stab wounds to his right forehead, left shoulder, and left palm. He also had been hit in the left eye, which was red. His upper right lip was wounded, as well. This corroborates the wounds described in the affidavit of complaint and those shown in the photographs.

The transcript of the petitioner's plea hearing reflects that the trial court informed the petitioner (1) of the seven charges against him; (2) of the number of years possible for each offense; (3) that the petitioner had the right to counsel at every stage of the proceeding; (4) that he had the right to plead not guilty; (5) the right to a speedy and public jury trial, the date of which was to occur the following week; (6) the right to confront and cross-examine adverse witnesses and to compel witnesses to appear and to testify on the petitioner's behalf; (7) the right to be protected from compelled self-incrimination; (8) the right to appeal the trial's verdict; and (9) that if the petitioner pleaded guilty, there would be no trial. The court told the petitioner that the court might ask him questions about the offenses and that the petitioner's answers could be used against him subsequently in a perjury prosecution, and the court inquired into the voluntariness of the pleas.

The court also heard the factual bases for the pleas. The petitioner indicated that he had gone over the plea documents and waivers with counsel and that he understood his rights. He agreed that by pleading guilty, he was admitting his guilt. He agreed that he had weighed his options and had decided that pleading guilty was in his best interest. He stated he was satisfied with his attorney. He also said he had no further questions for the court after asking about his sentencing range.

In the order denying post-conviction relief, the court found that the petitioner did not prove his allegations by clear and convincing evidence. First, the court held that the petitioner entered his guilty pleas voluntarily, intelligently, and knowingly, and that the petitioner had indicated he was satisfied with his attorney's representation. She had, in fact, obtained a fifteen-year sentence at Range I, when the petitioner already had four prior felony convictions. Next, the court stated that it believed the attorney's testimony over that of the petitioner. The court found the petitioner had not demonstrated by clear and convincing evidence that but for counsel's errors, the petitioner would have insisted on proceeding to trial. Instead, the court found that counsel interviewed witnesses and potential witnesses, conducted a "full discovery," and "investigate[d] every possible defense available to the petitioner." The court stated that the victim's injuries apparent in the black and white photocopies of the color photographs and the color photographs were reflected in the victim's medical records. The court stated that counsel's representation of the petitioner was "well within the bounds of generally accepted professional standards." Finally, the court found that the petitioner had not satisfied his burden in alleging his Brady and double jeopardy violations.

-8-

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner claims trial counsel provided ineffective assistance by failing to obtain the victim's medical records before the petitioner pleaded guilty and by not identifying and interviewing alibi witnesses. He argues that these were not tactical choices but instead fell below the standards of competence articulated by the American Bar Association as she failed (1) to obtain facts relating to the basis of the pleas and (2) to use due diligence in locating an alibi witness and developing a defense using this alibi witness.

The State claims initially that the petitioner has waived the issue pursuant to Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure and Rule 10(b) of the Tennessee Rules of the Court of Criminal Appeals by not including citations to the record in his brief. We note that the petitioner has failed to include citations to the record in his "argument" section as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. However, the petitioner does refer to specific pages of the record in the preceding sections of his brief. We opt to decide the issue on the merits.

The State argues that the trial court properly found that the petitioner had received the effective assistance of counsel, as the petitioner has not proven deficiency and prejudice for either claim of ineffective assistance. The medical records corroborate the victim's reported injuries, such that the petitioner was not prejudiced by not having the records. Also, the petitioner did not present at the post-conviction hearing the witnesses he claimed counsel failed to interview. Therefore, he cannot prove that these alibi witnesses existed and that any failure to call these witnesses harmed him. State v. Black, 794 S.W.2d 752, 759 (Tenn. Crim. App. 1990); Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). Additionally, the trial court accredited the testimony of trial counsel, who stated (1) that once the petitioner had seen photographs of the victim's extensive injuries, the petitioner no longer requested that counsel obtain the victim's medical records and (2) that she had never heard the name "Shirley Shields" until the post-conviction hearing.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn.

1997).  The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.  The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id., 104 S. Ct. at 2068.  Failure to satisfy either prong results in the denial of relief.  Id. at 697, 104 S. Ct. at 2069.

The record reflects that the trial court properly found the petitioner did not satisfy his burden of alleging clear and convincing evidence of the ineffective assistance of counsel.  The petitioner did not demonstrate both deficient performance and prejudice as required by Strickland and Henley.

Before pleading guilty, the petitioner viewed photographs of the victim's injuries to his shoulder, hand, and head, which included a stab wound on his forehead.  He knew the extent of the claimed injuries.  He and his counsel discussed that the documents the petitioner claimed were affidavits were not made under oath.  We also note that the medical records corroborate the extent of the victim's injuries instead of providing a basis for developing the petitioner's claim that the victim inconsistently described his injuries.  Consequently, the petitioner was not prejudiced by not having the records before entering his guilty plea.

Additionally, the petitioner did not meet his burden to present at the post-conviction hearing the witnesses he claimed counsel failed to interview.  Ms. Shields and the petitioner's father did not testify.  Even if the petitioner had been able to "establish that defense counsel was deficient in the investigation of the facts . . . the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called."  Black, 794 S.W.2d at 757-58.  We conclude the trial court properly rejected the petitioner's claim of ineffective assistance of counsel.

## II.  INVOLUNTARY GUILTY PLEAS

The petitioner contends his pleas were involuntary because "he was given only the choice between proceeding to trial with unprepared and inadequate counsel[] and acceptance of the plea."  The petitioner claims that had counsel not been ineffective, he would have insisted on going to trial and would not have pled guilty.

The State again claims that the petitioner has waived the issue pursuant to Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure and Rule 10(b) of the Tennessee Rules of the Court of Criminal Appeals by not including citations to the record in his brief.  While the petitioner has again failed to include citations to the record in his "argument" section, he does refer to specific pages of the record in the preceding sections of his brief.  We opt to decide the issue on the merits.

-10-

The State claims in the alternative that the petitioner's guilty pleas were voluntary under the totality of the circumstances approach listed in Powers v. State, 942 S.W.2d 551, 556 (Tenn. 1996). The State says the record affirmatively shows that the petitioner was aware of the consequences of the pleas as required by Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969) and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993); see also Caudill v. Jago, 747 F.2d 1046, 1050-52 (6th Cir. 1984). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904 (citing Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1712 (1969)).

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to insure that he or she fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Boykin, 395 U.S. at 243-44, 89 S. Ct. at 1712); Blankenship, 858 S.W.2d at 904. In Boykin, the United States Supreme Court stated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the privilege against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Rule 11(b) of the Tennessee Rules of Criminal Procedure outlines advice to be given to a defendant entering a plea and explicit procedures for insuring on the record that guilty pleas are voluntarily and understandingly made. However, only the constitutionally grounded rights stated in Boykin are addressable, per se, under the Post-Conviction Procedure Act. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989).

The record shows that the petitioner agreed at the plea hearing that he was waiving his rights specified in Boykin and Tennessee Rule of Criminal Procecdure 11(b) by pleading guilty. The petitioner had four prior felony convictions in two other states. The trial court accredited trial counsel's testimony that the petitioner had insisted that she not tell the State that he wanted a plea

offer because he had said he was experienced with the criminal justice system and knew that he would receive a better plea offer the longer he waited to plead. The petitioner, in fact, accepted the plea offer the week before his scheduled trial. The trial court also found credible trial counsel's testimony that the petitioner did not want to risk receiving an enhanced sentence from the court. The record shows that the petitioner and counsel discussed the evidence against the petitioner, including the petitioner's own incriminating telephone messages left on Ms. Burke's telephone and the photographs of Mr. Thomas's injuries, as well as the likelihood of conviction even if the preliminary hearing tape and transcript existed. Finally, the petitioner admitted on cross-examination that he had pled guilty to avoid an enhanced sentence. He also stated that no one had threatened him to induce him to plead guilty. We conclude that in view of the totality of circumstances surrounding the petitioner's guilty pleas, the petitioner's pleas were voluntary. The trial court properly denied relief.

The post-conviction relief petition alleging ineffective assistance of counsel and involuntary guilty pleas was properly dismissed. Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE